UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WEI CHIN, | ) | CASE NO. 4:10 CV 1145 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff, Wei Chin, filed this *Bivens*[1] action under 42 U.S.C. §1983 against the Federal Bureau of Prisons ("BOP"), Corrections Corporation of America ("CCA"), Northeast Ohio Correctional Center ("NEOCC"), Warden Roddie Rushing, and NEOCC Grievance Officer Julian Shane.

## I. Background

Plaintiff alleges the following facts.  Plaintiff began to complain to prison authorities that the rice served at NEOCC was raw or undercooked beginning in 2009.  In January, 2010, Plaintiff filed an informal complaint about the rice.  The kitchen manager responded by saying that Plaintiff was the only inmate to complain.

On March 5, 2010, following a meal at which rice was served, Plaintiff returned to his cell and wrote the following on a piece of paper to circulate among other inmates:

Today, March 5, 2010, the dinner rice is half-cooked.  Here are our names and

_____

[1]*Bivens v. Six Unknown Agents*, 403 U.S. 383 (1971).

inmate registration numbers.  We can prove the rice cannot be eaten.

(Compl. at 2.)

By the end of the day, forty-seven inmates had signed the paper.  On March 14, 2010, Plaintiff filed a grievance about the rice at the prison to which he attached the paper setting forth the signatures of the other inmates.

On March 16, 2010, Plaintiff was charged with a BOP 212 violation for encouraging a group demonstration and was placed in the segregation housing unit.  The charge was eventually dismissed; however, Plaintiff spent sixteen days in segregation.

Arising from these facts, Plaintiff sets forth the following causes of action:  (a) malicious prosecution against Grievance Officer Julian Shane for allegedly charging him with the conduct violation even though Shane knew or should have known that probable cause for such a violation did not exist; (b) abuse of process against Shane for instituting the conduct violation for the ulterior purposes of  retaliating against Plaintiff for complaining about the rice served in the prison and to obscure the prison's food service deficiency; (c) intentional infliction of emotional distress "due to the unreasonable solitary confinement caused by the 212 charge"; and (d) negligent infliction of emotional distress and failure to train and supervise against the BOP, CCA, and Warden Rushing. Plaintiff states that the Warden was deliberately indifferent to his sufferings and the prison's kitchen service deficiency and that the BOP, CCA, and Warden Rushing are liable for failing to properly train and supervise Shane.

## II.  Analysis

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United

2

States, and (2) that the deprivation was caused by a person acting under color of state law.  *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978).  Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

Plaintiff's first claim is one for "malicious prosecution."  The Sixth Circuit has recognized a claim of malicious prosecution under the Fourth Amendment "where [the] plaintiff alleged that defendants wrongfully investigated, prosecuted, convicted, and incarcerated them." *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003).  In order to make out such a claim, "a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.'" *Id*.  Plaintiff alleges that Shane initiated an "in-prison prosecution" against him without probable cause.  However, prison disciplinary proceedings are not criminal prosecutions, and the full panoply of rights due a defendant in criminal prosecutions does not apply to prison disciplinary proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may

---

[2]An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

result in segregation.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986).

Prison inmates do have a constitutionally-protected right under the Due Process Clause of the the Fourteenth Amendment to the Constitution not to be deprived of liberty without due process of law.[3]  *See Freeman*, 808 F.2d at 951.  In order for this right to be implicated, the inmate must establish the existence of a constitutionally-protected liberty interest.  The Constitution itself does not give rise to a liberty interest in avoiding an inmate's transfer to more adverse conditions of confinement.  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations where the freedom of restraint involved imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life."  515 U.S. at 484.  *Sandin*, however, found no liberty interest protecting against a 30–day assignment to segregated confinement because the restraint did not "present a dramatic departure from the basic conditions of [the inmate's] sentence."  *Id*.  *Cf. Wilkinson v. Austin*, 545 U.S. 209, 224 (2005)(finding a liberty interest in avoiding assignment to state's supermax prison presenting  atypical and significant hardships, *i.e.*,  almost all human contact was prohibited for inmate placed in supermax facility; the duration of the assignment was indefinite; and the assignment disqualified otherwise eligible inmates for parole consideration).

Plaintiff spent time in the segregation unit pending resolution of the disciplinary charges against him; however, the disciplinary charges were eventually dismissed, and there is no indication that the segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  As in *Sandin*, no liberty interest is

---

[3]The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.

implicated, and Plaintiff's alleged malicious prosecution claim fails to state a claim.

Plaintiff's "abuse of process" claim is also non-cognizable. Plaintiff's claim is that he was disciplined in retaliation for his complaints about the prison's rice and to obscure the prison's food service deficiency. While Section 1983 provides a remedy for retaliation, such a claim requires the plaintiff to show: (1) the plaintiff engaged in conduct protected by the Constitution or statute; (2) the defendant took an adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between these two elements, *i.e.*, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). These elements are not satisfied.

First, the only protected conduct conceivably engaged in by Plaintiff is his complaining to prison officials about the quality of rice dishes served at the prison. Generally, inmates have a First Amendment right to file grievances against prison officials. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). However, the Supreme Court has made clear that the rights "prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). A prison regulation that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Id.*; *see Turner v. Safley*, 482 U.S. 78, 89 (1987). Plaintiff received a disciplinary conduct report for circulating a petition pursuant to a prison regulation prohibiting inmates from organizing group demonstrations because such conduct presents a potential threaten to the security of the institution. Security concerns are rationally related to the legitimate penological interests of the prison. Therefore, a prisoner does not possess a First Amendment right to circulate a petition as part of his

5

right to file a grievance.

Second, as set out above, in order to make out a retaliation claim, a plaintiff must demonstrate that the adverse actions taken against him were motivated at least in part by his participation in protected activity. *Thaddeus-X*, 175 F.3d at 394. Plaintiff was charged with organizing a group demonstration based on the petition he circulated. There are no facts in the complaint which reasonably suggest the charges were based upon an intent to retaliate against him, as opposed to being based on the undisputed conduct Plaintiff engaged in. In sum, Plaintiff's abuse of process claim is not cognizable under Section 1983.

This leaves Plaintiff's claims for "intentional infliction of emotional distress" and "negligence and failure to train and supervise." Although these claims appear to be purely state-law claims, Plaintiff states that the NEOCC Warden is liable for "his deliberate indifference toward the plaintiff's sufferings." To the extent this statement purports to allege a violation of the Eighth Amendment, such claim fails. An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir.1996). The Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation). Undercooked rice served occasionally with meals is not a deprivation which triggers Eighth Amendment scrutiny.

Plaintiff also alleges that the BOP, CCA, and Warden Rushing are liable for their failure to properly train and supervise Grievance Officer Shane. However, inadequate training or

supervision, no matter how deficient, cannot lead to liability absent an underlying constitutional violation.  *See Reed-Baglia v. County of Summit*, Case No. 5: 09CV352, 2010 WL 723761, at * 4 (N.D. Ohio Feb. 24, 2010).

There being no cognizable constitutional claims in the case, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining, purely state-law claims.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims in a case are dismissed before trial, state law claims should also be dismissed).

### Conclusion

For all of the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

Dated: October 12, 2010

                                          *s/John R. Adams*
                                        JOHN R. ADAMS
                                        UNITED STATES DISTRICT JUDGE

---

[4] 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."